MIRANDA HERMANOS, S. EN C., Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Intervener.

No. 129. Argued May 1, 1947.—Decided July 23, 1947.

*Dubón & Ochoteco,* and *Otero Suro & Otero Suro* for petitioner. *Luis Negrón Fernández, Attorney General,* and *J. B. Fernández Badillo, Deputy Attorney General,* for intervener, respondent in the main proceeding.

Mr. Justice de Jesús delivered the opinion of the Court.

The petitioner begins its fiscal year on January 11 of each year and closes it on January 10 of the following year. On January 10, 1943, at the close of its operations corresponding to the year 1942–43 it credited to each member in its books the share due them from the benefits obtained during said year. It likewise made gifts to its employees for services rendered between January 11, 1942, and January 10, 1943. It also paid commissions to some of its employees at the close of the fiscal year.

On March 18, 1943, pursuant to Act No. 29 of December 7, 1942 (Spec. Sess. Laws, p. 160), known as the "Victory Tax Act," as amended by Act No. 175 of May 15, 1943 (Laws of 1943, p. 630), it filed with the Treasurer of Puerto Rico the affidavit required by the statute stating the payments it had made from January 1, 1943, until February 15 following. It enclosed the tax which it had withheld at its source corresponding to said payments.

In the return of the income subject to the Victory Tax, petitioner only reported the proportionate portion of the benefits, distributed among its members and the gifts and commissions paid to its employees during the fiscal year 1942–43, that is, that part corresponding to the first ten days of 1943, notwithstanding the fact that the total amount of the benefits, gifts and commissions were actually credited or paid on January 10, 1943, at the close of its operations for the fiscal year. In other words, the petitioner failed to report the payments made on January 10, 1943, corresponding to gifts, benefits and commissions accrued but not paid between January 11 and December 31, 1942. Consequently it failed to withhold at its source and to pay to the Treasurer the tax on said payments.

On March 20, 1944, the Treasurer of Puerto Rico notified petitioner of a deficiency for the preceding year by reason of the Victory Tax amounting to $3,802.91, plus interest at the rate of 1 per cent monthly until the date of payment. Petitioner moved for a reconsideration of the Treasurer's decision which was denied. It appealed to the Tax Court and on July 3, 1946 the court modified the decision appealed from in the sense of reducing the monthly interest from 1 per cent to ½ per cent and as thus modified it was affirmed. Petitioner then sought a reconsideration which was denied. It then appealed to this Court.

Petitioner alleges that it was not bound to withhold at its source and to pay the Treasurer the Victory Tax on payments for services rendered before January 1, 1943—on which date the Act creating the Victory Tax became effective—notwithstanding the fact that *it had been credited* in its books on January 10, 1943.

Section 1 of the Victory Tax Act creates, in addition to any other tax imposed by the Income Tax Act, a 5 per cent tax upon the gross income of any person, in excess of $15.05 a week for salaries, wages, remunerations, commissions, etc.[1]

■ The question for decision is one of statutory construction. Following the cardinal rule of hermeneutics we must determine which was the legislative intent. We must now examine the Act.

In defining the gross income for the purpose of the Act, § 1 says:

"By gross income shall be understood every sum of money derived from the sources above enumerated as subject to taxation which is *actually received by the taxpayer, or deposited or assigned in his favor or for his benefit. The word 'payment' as used in this Act shall have also that same meaning.* (Italics ours.)

---

[1] The Act allows certain deductions and provides for income not subject to the tax to which we need not refer for the purpose of this opinion.

Section 4 provides:

"Every individual who receives income on which The Victory Tax shall be paid and from which no retention has been made at source, shall present to the Treasurer of Puerto Rico the first income tax return on February 15, 1943, *covering the income of the month of January 1943.* On July 15, 1943, he shall file his return *covering the income received* from January 31 to June 30, 1943, and henceforward the 15th of January and the 15th of July of each year, . . . ." (Italics ours.)

And § 7 provides:

"Every person who, according to the provisions of this Act, is bound to withhold at its source the tax levied, shall present, together with his payments to the Treasury, affidavits setting forth therein the payments made to the taxpayers from whom he withheld the tax . . . . on or before February 15, 1943, as regards *payments made* from January 1, 1943, up to January 31, 1943; on or before July 15, 1943, as regard *payments made* during the semester from January 1 to June 30, 1943, not included in the previous payment, and thereafter, on or before January 15th and July 15th, as regards the semesters ending on December 31 and June 30, respectively. . . ." (Italics ours.)

As we have pointed out, the statute provides that any payment of wages, salaries, compensation, commissions, etc., received by the taxpayer or deposited in his favor or for his benefit beginning January 1, 1943, is subject to the payment of the Victory Tax.

If the intent of the Legislature was not to tax the wages, compensations, etc. for services rendered prior to January 1, 1943, but actually received or credited after that date, it could have easily said so in defining the income subject to tax. A careful examination of the Act shows that the lawmaker took pains in making clear that all income earned, credited or deposited in favor of an individual beginning on January 1, 1943, shall be subject to the tax.

It is true that § 1 of the Act provides that the tax imposed thereby shall be collected and paid from and after Jan-

uary 1, 1943, but this does not mean that the tax cannot be collected on the payment for services rendered prior to that date, but which were paid or assigned thereafter. The purpose of this provision is merely to determine the time on which the income received becomes taxable.

In the present case no question of applying the Act retroactively is involved. As stated in *Harvester Co.* v. *Dept. of Taxation,* 322 U. S. 435, 445 (1944), 88 L. ed. 1373:

"Appellants do not deny that the dividends are derived from earnings from within the State of Wisconsin, but it is urged that some of them at least were paid from corporate surplus earned and set aside in years before the taxing statute was enacted. But since the taxable event, the distribution of dividends paid from earnings, and the deduction of the tax from them occurred subsequent to the enactment of the taxing statute, no question of its retroactive application is involved."

In our judgment, the error in question was not committed. ▉ Petitioner urges in its other assignment of error that it was not bound to pay the rest of the Victory Tax which it did not withhold at its source from its members or employees for payments made on January 10, 1943, for services rendered prior to the effectiveness of the Act.

In support of this assignment of error, petitioner adduces arguments which could not stand the most simple analysis. It contends that if, because of a misinterpretation of the Victory Tax Act, it failed to withhold at its source the tax as to a proportionate part of the salary for services rendered prior to January 1, 1943, it is not bound to pay said tax for the persons who received said income. It further alleges that the tax is imposed on the person who receives payment and not on the person who makes it.

Section 3 of the Act imposes the duty of withholding at its source the Victory Tax on the person who makes the payments for any of the items mentioned as taxable under § 1, which have not been mentioned in § 2; and § 7 imposes the duty to pay it to the Treasurer of Puerto Rico.

Ignorance of the law does not excuse any one from compliance therewith, and if the person who makes the payment fails to comply with the duty to withhold the tax at its source, this misinterpretation does not excuse that person from the payment of what he should have withheld for the Treasurer. The fact that the tax is imposed on the person who receives the payment and not on the person withholding it, is immaterial, because what is collected from the person withholding it is not the tax imposed on him but the amount which he should have withheld and failed to do so.

For the reasons stated the writ issued will be discharged and the decision under review affirmed.